UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Lori Ann DiMambro

   v.                                  Civil No. 14-cv-482-LM
                                      Opinion No. 2015 DNH 168

Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration


**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Lori Ann Dimambro moves to reverse the Acting Commissioner's decision to deny her application for Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423.  The Acting Commissioner, in turn, moves for an order affirming her decision.  For the reasons that follow, the matter is remanded to the Acting Commissioner for further proceedings consistent with this order.

## I. Standard of Review

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of social security disability benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations

omitted). Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam). Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts, document no. 12. That statement is part of the court's record and will be summarized here, rather than repeated in full.

Dimambro has been diagnosed with a variety of back conditions including degenerative disc disease and degenerative joint disease of the lumbar spine, disc herniation in the lumbar spine, and degenerative disc disease of the cervical spine. In March of 2013, apparently on a referral by Dimambro's primary care provider, Dr. David Reall, physical therapist Becky Thurston performed an assessment of Dimambro's physical

3

capabilities.[1]  Thurston's assessment was based on various forms of physical testing.  In a document titled "Client Capabilities & Physical Job Requirements Overview," which Thurston attached to her report, she indicated that in a work day, Dimambro was capable of engaging in a combination of sitting, standing, and walking for between four and five hours.  She also indicated that Dimambro was capable of: (1) sitting for three to four hours, in blocks of 45 minutes; (2) standing for one to two hours, in blocks of 25 minutes; and (3) walking for four to five hours.

About a week after Thurston conducted her assessment, Dimambro saw Dr. Reall.  He concluded his office note with a set of end-of-visit instructions that include the following:

> Degenerative Joint Disease Cervical Spine/Degenerative Disc Disease lumbar spine – Reviewed functional capacity examination.  In summary, you are capable [of] working part time 4-5 hours per day as combination [of] sitting, standing, walking with regularly allowed breaks.  Your maximum sitting interval is 45 minutes; maximum standing interval 25 minutes prior to needing a break, and walking for short distances only.  You should be allowed to change positions frequently within the above mentioned intervals for relief of pain.

Administrative Tr. (hereinafter "Tr.") 456.

---

[1] The court infers that Dr. Reall referred Dimambro to Thurston because Thurston sent Dr. Reall a copy of her report on the same day she completed her assessment.  See Administrative Tr. 381.

4

In January of 2014, Dr. Reall completed a Physical Impairment Medical Source Statement on Dimambro. In it, he opined that Dimambro could: (1) "walk moderate distances on a frequent basis," Tr. 822; (2) sit for 45 minutes before needing to get up; and (3) stand for 20 to 30 minutes before needing to sit down. The form that Dr. Reall filled out also asked him to indicate how long Dimambro could "sit and stand/walk total in an 8-hour working day." Tr. 823. The form provided four possible responses: "less than 2 hours," "about 2 hours," "about 4 hours, and "at least 6 hours." Tr. 823. For sitting, Dr. Reall checked the box for "about 2 hours," and for standing/walking, he checked the box for "about 4 hours." Id. Finally, the form asked Dr. Reall to describe "any other limitations . . . that would affect [Dimambro's] ability to work at a regular job on a sustained basis." Tr. 825. In response, he wrote: "See [Thurston's] functional capacity examination for specific details. Her capabilities are limited to a maximum work day of 4-5 hours combined sit/stand/walk." Id.

After conducting a hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except the claimant is able to sit for

> 45 minutes at one time and stand for 25 minutes at one
> time before needing to change position.  She can
> occasionally bend, stoop, squat, crouch, climb stairs,
> kneel and balance; occasionally perform flexion and
> rotation of head and neck; and occasionally perform
> overhead reaching.  . . .

Tr. 22.[2]

### III. Discussion

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  The only question in this case is whether Dimambro was under a disability between October 11, 2009, and July 25, 2014, which is the date of the ALJ's decision.

To decide whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe

---

[2] As used in the ALJ's decision, "residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a).

> impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 404.1520).

The claimant bears the burden of proving that she is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)). Finally,

> [i]n assessing a disability claim, the [Acting Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the claimant or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

B. Dimambro's Claims

Among other things, Dimambro claims that when the ALJ determined her RFC, the ALJ erred by failing to fully credit her treating physician's opinion that she was only able to sit, stand, and walk for a total of four to five hours in a work day. The court agrees.

In his decision, the ALJ had this to say about the opinion evidence:

> I have given . . . significant probative weight to both Ms. Thurston['s] assessment and Dr. Reall's agreement with the assessment. However, while Ms. Thurston is a specialist in functional assessments and Dr. Reall is a treating source, I find no support for her assessment that the claimant can only sit, stand or walk in combination for four to five hours in a workday. In the report, Ms. Thurston stated the claimant is able to sit for 3 to 4 hours in 45 minute durations, stand for 1 to 2 hours in 25 minute durations, and walk for 4 to 5 hours in frequent moderate distances. Ms. Thurston then concludes that the claimant is only able to work 4 to 5 hours in total when considering a combination of time associated with sitting, standing, and walking. She provides no explanation on how she arrived at this conclusion. It is inconsistent as the hours in total exceed those of a normal 8-hour workday. Dr. Reall similarly adopts the limitations at item number 16 and merely refers back to the functional capacity examination for specific details. Yet, he checks boxes in section (e) where he indicates the claimant is able to sit, stand and walk for greater than 5 hours. Additionally, although the claimant testified that she needs to lie down every day for as many as four hours [that complaint] is not reported in her medical records. Indeed, I find no evidence that the claimant cannot sit, stand or walk in combination for 8 hours in an 8 hour work day if she is allowed to

8

      alternate her positions within the confines of the above residual capacity.

Tr. 25 (citation to the record omitted).[3]

    The fundamental problem with the ALJ's reasoning is that it posits, and then relies upon, a purported internal inconsistency in Thurston's assessment (and Dr. Reall's medical source statement) that is not actually an inconsistency.  In the forms they filled out, Thurston and Dr. Reall were asked about Dimambro's capacities to perform three distinct activities, sitting, standing, and walking.  They were also asked a separate question about Dimambro's capacity to perform those three activities in combination.  If the forms that Thurston and Dr. Reall filled out contemplated that a person's capacity to sit, stand, and walk, in combination, during a work day, was merely a function of adding that person's individual capacities to sit, stand, and walk, the forms would not have included a separate inquiry about those three activities in combination.  Given the content of the forms, it is evident that they are premised on the perfectly reasonable idea that, for example, if Dimambro were to sit during a single work day for the four hours that Thurston and Dr. Reall said she could sit, then she would be

---

    [3] The record also includes, but the ALJ did not mention, an assessment of Dimambro's physical RFC by Dr. Burton Nault, a state-agency medical consultant.  <u>See</u> Tr. 84-86.

able to stand or walk for no more than an hour during the remainder of that work day.  Based upon the foregoing, this is not, as the Acting Commissioner suggests, a case in which the ALJ had before him two conflicting pieces of evidence and permissibly chose one over the other.

Rather, this is a case in which an ALJ has made an assessment of a claimant's RFC without any support from an expert opinion.  The Acting Commissioner acknowledges the rule that "since bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record." Gordils v. Sec'y of HHS, 921 F.2d 327, 329 (1st Cir. 1990) (per curiam) (citations omitted).  She also acknowledges the allied rule that "an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person." Santiago v. Sec'y of HHS, 944 F.2d 1, 7 (1st Cir. 1991) (per curiam); see also Manso-Pizarro, 76 F.3d at 17.  Yet here, the ALJ determined that Dimambro had the RFC for full-time work without identifying any expert RFC evaluation to support a finding that Dimambro had the RFC to sit, stand, and walk for a full eight-hour work day.

The Acting Commissioner argues that the ALJ's determination has support from Thurston's opinion but, as the court has already explained, that argument is incorrect.  When asked how long Dimambro could sit, stand, and walk, during a work day, both Thurston and Dr. Reall indicated that Dimambro could do those three things, in combination, for only four to five hours.  Because the next three questions and responses on Thurston's form, pertaining to sitting, standing, and walking, considered those activities individually rather than in combination, Thurston's responses do not reflect an opinion on her part that Dimambro was capable of anything more than four to five hours per work day of sitting, standing, and walking.  Accordingly, the ALJ identified no support, in the form of an expert opinion, for his determination that Dimambro was capable of meeting the physical requirements of full-time employment.  Because the ALJ's RFC assessment is unsupported by any expert evaluation, and because a lay person is not competent to determine from the medical evidence how many hours in a work day Dimambro can sit, stand, and walk, the ALJ's RFC assessment is not supported by substantial evidence.  See Manso-Pizarro, 76 F.3d at 17-18.  Accordingly, this case must be remanded.

## IV. Conclusion

For the reasons described above, the Acting Commissioner's motion for an order affirming her decision, document no. 11, is denied, and Dimambro's motion to reverse that decision, document no. 8, is granted to the extent that the case is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 31, 2015

cc: Laurie Alice Smith, Esq.
    D. Lance Tillinghast, Esq.
    Michael T. McCormack, Esq.